UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

CELESTE BUTTS,

                Plaintiff,                11 Civ. 6769

   -against-                      OPINION

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

                Defendant.

-------------------------------------X

A P P E A R A N C E S:

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 9/6/12

      Attorney for Plaintiff

      INSLER & HERMANN, LLP
      80 Grasslands Road
      Elmsford, NY 10523
      By:  Gabriel Jacob Hermann, Esq.
           Lewis B. Insler, Esq.

      Attorney for Defendant

      PREET BHARARA
      UNITED STATES ATTORNEY, SOUTHERN DISTRICT OF NEW YORK
      One St. Andrew's Plaza
      New York, NY  10007
      By:  Susan D. Baird, Esq.

**Sweet, D.J.**

Plaintiff Celeste Butts ("Butts") has filed a motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings to review and reverse the decision of Defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner") denying Butts disability benefits. The Commissioner has opposed Butts' motion and has filed his own cross-motion for judgment on the pleadings. On the facts and conclusions set forth below, Butts' motion is denied, the Commissioner's cross-motion is granted and the denial of Butts' application for disability benefits is affirmed.

**Prior Proceedings**

Butts filed an application with the Social Security Administration for disability benefits on March 18, 2007 (Tr. 116-18).[1] Her application was denied on May 30, 2007 (Tr. 77), and Butts requested a hearing by an Administrative Law Judge ("ALJ") (Tr. 82-84). On September 8, 2009, a hearing was held before ALJ Paul Heyman (Tr. 23-73), and, on September 30, 2009, the ALJ issued a decision finding Butts to be not disabled (Tr.

---

[1] "Tr." Refers to the transcript of the administrative record filed by the Commissioner.

1

14-22).  The Appeals Counsel denied Butts' request for review on
September 10, 2010 (Tr. 10-12).  On May 2, 2011, the Appeals
Council set aside its earlier action so that Butts could receive
a copy of the hearing tape (Tr. 7-8).  On July 25, 2011, the
ALJ's decision became the final decision of the Commissioner
when the Appeals Council denied Butts' request for review (Tr.
1-3).

         After the Appeals Council upheld the ALJ's decision,
Butts commenced this action, filing her complaint on September
27, 2011.  On May 8, 2012, Butts filed her Rule 12(c) motion for
judgment on the pleadings.  After the parties consented to two
extensions, the Commissioner filed his opposition and cross-
motion for judgment on the pleadings on August 14.  The two
motions were marked fully submitted on August 27.

**The Facts**

         Butts was born on July 15, 1963 (Tr. 116) and has a
high school equivalency diploma (Tr. 30, 152).  At the time of
her May 18, 2006 injury that gave rise to this litigation, Butts
was 42 years old.  Prior to her injury, Butts had worked for 17
years as a school safety agent in the New York City Public
Schools (Tr. 139).  In this position, Butts was required to walk

2

for six hours a day, stand for six hours a day, sit for one-half hour per day, climb for two hours per day, handle and grab or grasp big objects for six hours a day, among other duties (Tr. 149).  She was also required to lift 100 pounds or more and restrain students of varying heights and weights (Tr. 149). Butts states that she was stationed in a known high-risk, hostile environment where chronic problems occurred on a daily basis (Tr. 149).

On May 18, 2006, Butts suffered injuries to her head, neck, back and right shoulder (Tr. 148) after she was attacked on the job by a student (Tr. 30-31).  On the day of the incident, Butts was treated at Weiler Hospital in the Bronx (Tr. 179).  The medical records note that Butts "[complained of] headache to the parietal area of scalp [status post] fell and hit head on floor during a struggle [with] 12 [year old] disorderly child in afternoon today at 12:15" (Tr. 179).  A computerized tomography ("CT") scan of the head was unremarkable (Tr. 185).  Following the attack, Butts stated that she could not exert herself in any way, could not sit, stand or walk for reasonable periods of time, could not lift carry or climb, and suffered from chronic pain that prevented her from sleeping (Tr. 148).

After the Weiler Hospital visit, Butts received medical treatment from an orthopedic surgeon, Dr. Michael Palmeri.  In a report dated June 22, 2006, Dr. Palmeri concluded that Butts had a post-concussive syndrome, cervical and lumbar strain with radiculopathy and left shoulder impingement syndrome (Tr. 192).  In a report dated one week later, June 29, 2006, Dr. Palmeri notes that Butts has complained of injuries to her neck, left shoulder and back following a work-related incident and that she is suffering from headaches (Tr. 191).  Dr. Palmeri assessed a thoracolumbar sprain, but deep tendon reflexes and motor function were intact (Tr. 192).  The report notes that Butts has an antalgic (pain-based) gait pattern with restricted range of motion of the cervical spine and spinal tenderness and spasm (Tr. 191).  Dr. Palmeri's report stated: "My impression is that Ms. Butts suffers from a cervical and lumbar strain with radiculopathy and left shoulder impingement syndrome.  I request authorization for an MRI examination of the cervical spine, thoracic spine, lumbar spine and left shoulder.  I also request authorization for physical therapy.  She should continue a course of Naprosyn and Skelaxin.  She is temporarily totally disabled.  She should follow up in the next two to three weeks for a repeat evaluation." (Tr. 191).

4

In addition to Dr. Palmeri, Butts also came under the care of Dr. John Vlattas, a specialist in physical medicine and rehabilitation.  In a letter dated July 7, 2006, Dr. Vlattas described Butts as "a pleasant and cooperative female who appears somewhat uncomfortable and move[s] slowly during the examination" (Tr. 188).  Dr. Vlattas found tenderness and spasm between the shoulder blades and various positive findings in the lower back and left shoulder, concluding that her May 18, 2006 injury resulted in: (1) concussion with postconcussion syndrome; (2) cervical sprain/strain, myofascial pain, bilateral cervical radiculopathy; (3) thoracic sprain/strain; (4) lumbosacral sprain/strain, right lumbosacral radiculopathy; (5) consider cervical lumbar disk herniation; and (6) left shoulder rotator cuff pain (Tr. 188).  Based on these findings, Dr. Vlattas requested MRI studies, physical therapy, medication and possible trigger point and intraspinal injection, depending on the outcome of the MRIs (Tr. 188-89).  In this July 7, 2006 report, Dr. Vlattas described Butts as "markedly, partially disabled, capable of sedentary-type work" (Tr. 189).  Butts continued to see Dr. Vlattas, visiting him on 23 occasions between July 2006 and April 2009.

On August 8, 2006, Butts again visited Dr. Palmeri, who reported that Butts had restricted range of motion of the

5

cervical, thoracic and lumbar spine (Tr. 490-91).  Dr. Palmeri

also reported weakness upon resistance in the left shoulder (Tr.

490).  Deep tendon reflexes were intact, and Butts could heel-

walk without significant difficulty (Tr. 490).  Dr. Palmeri

continued his assessments of cervical and lumbar strain with

radiculopathy, and left shoulder impingement syndrome, but

dropped the assessment of post-concussive syndrome (Tr. 490).

When seen on August 11, 2006, Dr. Vlattas assessed Butts as

"temporarily, totally disabled for her employment, overall,

markedly, partially disabled" (Tr. 452).


        An MRI of Butts' cervical spine on August 17, 2006

indicated a disc herniation at the C6-C7 with compression upon

the cord and mild cranial extension of the disc herniation (Tr.

298, 496-97).  Also present was disc degenerative change at the

C4-C5 level with ventral marginal osteophyte formation and

broad-based disc bulge, which abutted the ventral cord (Tr.

298).  An MRI of the thoracic spine showed no evidence of disc

herniation or compression (Tr. 296, 503-04).  An MRI of the

lumbar spine the following day showed broad, left-sided disc

herniation at the L4-5 level with the disc material narrowing

the left side neural foramina and abutting the existing left L4

nerve root (Tr. 295).  Also present were degenerative changes at

the L5-S1 disc level associated with a central annular tear and

central subligamentous disc herniation and straightening of the lumbar lordosis consistent with muscular spasm (Tr. 295).  An August 22, 2006 MRI of the left shoulder on the same date was unremarkable, showing no evidence of a rotator cuff tear or acute injury (Tr. 294, 505-06).

When seen on September 15, 2006, Dr. Vlattas evaluated Butts as "markedly, partially disabled, capable of sedentary-type work" (Tr. 242).  On September 20, 2006, Dr. Palmeri noted restrictions of ranges of motion, shoulder weakness upon resistance, but intact deep tendon reflexes (Tr. 484).  On a State of New York Workers' Compensation Board form, Dr. Palmeri stated that Butts was totally disabled from her regular work duties (Tr. 485).  On October 17, 2006, Dr. Palmeri assessed "worsening left shoulder impingement syndrome," cervical and lumbar strain with possible radiculopathy and herniated nucleus pulposi (Tr. 483).

A report from Dr. Vlattas dated November 14, 2006 notes that Butts was involved in a motor vehicle accident on November 1, 2006 (Tr. 239).  On November 14, 2006, Dr. Palmeri stated that Butts' cervical and thoracolumbar strain with radiculopathy and left shoulder impingement had "worsened after a recent motor vehicle accident" on November 1, 2006 (Tr. 482).

7

In a letter dated February 28, 2007, Dr. Vlattas confirmed that Butts "had an aggravation of her injuries due to a motor vehicle accident on 11/01/2006." (Tr. 231). In response to this aggravated injury, Dr. Vlattas prescribed resumption of Butts' physical therapy, and he continued to assess Butts as partially disabled from her job (Tr. 231).

On March 14, 2007, Dr. Barry M. Katzman, an orthopedic surgeon, performed an independent orthopedic examination of Butts (Tr. 194). Dr. Katzman's examination revealed full range of motion of her cervical and lumbar spine, no tenderness and the Spurling's maneuver was negative (Tr. 195). There was full strength in the arms, and reflexes were symmetrical (Tr. 195). Sensation to light touch was normal, and there was full strength in the legs (Tr. 195). Butts' left shoulder showed full range of motion, and there was no tenderness over the rotator cuff, biceps or acromioclavicular joint (Tr. 196). With respect to Butts' ability to work, Dr. Katzman stated: "The claimant was not working at the time of this examination, and from an orthopedic standpoint, she could return to work." (Tr. 196). Butts states that the validity of Dr. Katzman's findings is limited because he was asked to examine Butts only with respect to a head injury.

8

On May 4, 2007, Dr. William Lathan performed a consultative internal medicine medical examination (Tr. 202-05). Butts stated that she could perform all activities of personal care and daily living (Tr. 202). Dr. Lathan stated that Butts was not in distress, that her gait was normal and that she had a normal stance (Tr. 203). Examination of the cervical spine showed full range of motion, and the thoracic spine showed no abnormalities (Tr. 203-04). The lumbar spine showed flexion to 75 degrees at which time Butts complained of pain (Tr. 204). There was limited extension, lateral flexion and rotational movement of the lumbar spine, but there was full range of motion of the shoulders, elbows, forearms and wrists (Tr. 204). There was also full range of motion of the hips, knees and ankles, and muscle strength was normal in the arms and legs (Tr. 204). An x-ray of the lumbosacral spine showed a straightened lordotic curve, but no bony or disc pathology (Tr. 204, 206). With respect to Butts' employment, Dr. Lathan placed a moderate restriction for bending (Tr. 204). Butts contends Dr. Lathan's study, which was ordered by the Commissioner, is notable for its dissimilarity from all the treating source examinations.

In February, April and June 2007, Dr. Vlattas continued to describe Butts as "markedly partially disabled" (Tr. 231, 227, 225). During a visit on August 17, 2007, Dr.

Vlattas evaluated Butts and continued to describe her as
"markedly partially disabled, capable of sedentary work" (Tr.
222).  Dr. Vlattas recommended Tylenol as needed for pain (Tr.
222).  Dr. Vlattas made a similar recommendation of Tylenol for
pain on September 28, 2007 (Tr. 219).  On November 2, 2007, Dr.
Vlattas administered trigger point injections to the shoulder
girdle region (Tr. 216).  Dr. Vlattas ordered that, following
the injections, Butts apply ice, then moist heat and that she
continue physical therapy (Tr. 216).  On December 11, 2007, Dr.
Vlattas noted that Butts reported "some improvement with trigger
point injections only temporarily" (Tr. 213).


        After her monthly visits to Dr. Palmeri ended in
November 2006, Butts returned to see Dr. Palmeri on June 3,
2008.  At that time, she complained of mid- and lower-back pain
with radiation into the left leg and shoulder pain with
weakness.  An examination found tenderness at the shoulder
region with decreased range of motion, as well as cervical
muscle spasm and tenderness and significant loss of motion plus
similar findings for the lower back.  As a result, Dr. Palmeri
requested authorization for lumbar epidural injections and
indicated that he was still awaiting authorization for left
shoulder arthroscopic surgery (Tr. 411).

Butts testified that Dr. Palmeri performed surgery on her left shoulder on August 1, 2008 (Tr. 36-37). Butts stated that the pain is worse after the surgery and that some physicians have recommended surgery on her back (Tr. 38). Post-surgery, Butts has done physical therapy (Tr. 40) and takes Vicodin on an as-needed basis to control her pain (Tr. 44). Butts has stated that the Vicodin makes her groggy and tired and that she takes three pills per day (Tr. 45).

During a visit on August 8, 2008, Dr. Vlattas noted that, following the surgery, Butts' left shoulder was healing, but showing weakness (Tr. 542). Dr. Vlattas' impressions were (1) cervical sprain/strain with cervical disk herniation, myofasical pain syndrome, and bilateral cervical radiculopathy; (2) thoracic sprain/strain; (3) L4-L5 andL5-S1 disk herniations, bilateral lumbar radiculopathy, lumbar facet pain and bilateral sacroiliac join pain; and (4) left shoulder rotator cuff sprain, status post left shoulder arthroscopy 8/01/2008 with postoperative pain, limited motion and weakness (Tr. 543). Dr. Vlattas again described Butts as "temporarily totally disabled" (Tr. 543).

On September 23, 2008, Dr. Vlattas noted tenderness and limited range of motion and weakness of the left shoulder

11

(Tr. 539).  He also reported tenderness and limited range of motion of the cervical thoracic and lumbar spine, with tender sacroiliac joints (Tr. 539).  Dr. Vlattas continued to describe Butts as temporarily totally disabled for purposes of her prior employment (Tr. 540-41).  A November 11, 2008 examination yielded the same finding (Tr. 537).  Electromyography and nerve conduction studies were conducted on December 26, 2008 (Tr. 530-36, 581-87).  Dr. Vlattas evaluated the studies as showing left L5 radiculopathy (Tr. 530).  His report discussed the need for further lumbar injections and the possibility of orthopedic surgery (Tr. 530-31).

Dr. Vlattas continued to see Butts in January, March and April 2009, and he continued the same impressions, describing Butts as totally disabled for purposes of her prior employment, and overall, markedly partially disabled (Tr. 529, 525, 523).  In the March 3, 2009 examination, Dr. Vlattas requested lumbar epidural injections and Vicodin as needed for pain (Tr. 524-25).  Dr. Vlattas provided a similar description of Butts' condition in a note detailing the April 14, 2009 examination (Tr. 522-23).  In a questionnaire provided by Butts' counsel dated April 14, 2009, Dr. Vlattas found Butts to suffer from pain that was sharp, moderate to severe and frequent (as

12

opposed to constant or occasional) and that this pain interfered with Butts' attention and concentration (Tr. 570-71).

According to her testimony, Butts was involved in a car accident on June 3, 2009 (Tr. 33). On June 9, 2009, Butts returned to Dr. Palmeri for a follow-up evaluation (Tr. 513-14, 518). Butts reported that she had been involved in the June 9 motor vehicle accident, and, on physical examination, Butts exhibited an antalgic gait (Tr. 513). Evaluation of the cervical spine showed a moderate restriction of range of motion with moderate spasms in the left trapezius, and a positive Spurling's sign (Tr. 513). Butts' deep tendon reflexes were intact, and evaluation of the left shoulder revealed healed wounds (Tr. 513). Dr. Palmeri's impression was that Butts suffered from a continued cervical and thoracolumbar strain with radiculopathy and continued pain her left shoulder after the left shoulder injury and that these injuries were exacerbated by the June 3, 2009 car accident (Tr. 514). Dr. Palmeri recommended that Butts remain out of work for three to four weeks, and his opinion stated that Butts was "temporarily totally disabled" (Tr. 514). When Dr. Vlattas saw Butts on June 16, 2009, Butts reported the car accident (Tr. 507). Dr. Vlattas noted a right trunk shift with paraspinal spasm and

13

tenderness, and he reported that straight leg raising was
positive on the right and left (Tr. 507).

Because of the injuries sustained in May 2006, Butts
did not return to work (Tr. 32, 43).  A City of New York Law
Department Workers' Compensation Division form indicates that
Butts received partial temporary workers' compensation benefits
for the period May 19, 2006 through January 8, 2007 (Tr. 115).
Butts has stated that the pain in her lower back and neck
worsened as a result of the June 2009 car accident (Tr. 35).
Butts has also stated that she gets headaches regularly, as
often as three to four times per week (Tr. 61).  Butts testified
that she never received treatment for her headaches, but that
she took Vicodin prescribed by Dr. Palmeri for her back and neck
pain to relieve her headache symptoms (Tr. 63).

Butts testified that she continued driving after her
June 2009 car accident and drove her son to school, which is
about a half-hour away (Tr. 50).  She also drove 25 to 30
minutes to the supermarket (Tr. 46) and drove to medical
appointments and physical therapy (Tr. 41).  Butts also
testified that she went to church once per month (Tr. 135) and
went to South Carolina to visit family, though she was not the
driver on the trip (Tr. 42).  Butts also visits the casino twice

14

every six months (Tr. 134).  Although Butts is able to clean the
house for five hours, she takes breaks at half-hour intervals
(Tr. 51-52).  Butts' daughter helps her with the laundry (Tr.
52), and her son helps with taking out the garbage (Tr. 52).
According to her testimony, Butts is able to sit through two
hour-long television shows while sitting with a pillow (Tr. 56),
and she can sit through dinner with her son (Tr. 57).  Butts
also stated that she could follow written and spoken
instructions and had no problems getting along with bosses,
teachers, police or other people in authority (Tr. 136).

Raymond Cestar ("Cestar"), a vocational expert,
testified at Butts' hearing (Tr. 59-61, 113).  Cestar testified
that Butts' past job was characterized as a security guard,
which was light work (Tr. 60).  The ALJ asked Cestar about a
hypothetical younger person who could perform sedentary work
that did not require exposure to heights or use of dangerous
machinery (Tr. 65).  Cestar stated that such an individual could
not perform the job of security guard, but could perform the
sedentary jobs of surveillance system monitor, clerical worker
or small parts assembler (Tr. 65-66).  According to Cestar's
testimony, there were 1,000 surveillance system monitory jobs
locally and 25,000 such jobs nationally; 1,600 unskilled
clerical worker jobs locally and 26,000 nationally; 1,200

15

unskilled small parts assembler jobs locally and 100,000 jobs
nationally (Tr. 65).  Cester also testified that the
surveillance systems monitor jobs permitted an individual to sit
and stand at will (Tr. 65).  Cester also identified two light
jobs a hypothetical younger person could perform that did not
require exposure to heights or use of dangerous machinery and
that permitted a sit/stand option (Tr. 66).  These jobs included
parking lot cashier and ticket seller/cashier (Tr. 66-67).
There were 2,200 parking lot cashier jobs locally and 35,000
such jobs nationally, and 2,700 ticket seller/cashier jobs
locally and 144,000 jobs nationally (Tr. 66-67).


**The Applicable Standard**


        The Social Security Act provides that the "findings of
the Commissioner of Social Security as to any fact, if supported
by substantial evidence, shall be conclusive[.]"  42 U.S.C. §
405(g); see Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct.
1420, 28 L.Ed.2d 842 (1971); Perez v. Chater, 77 F.3d 41, 46 (2d
Cir. 1996).  Thus, if a court finds that there is substantial
evidence supporting the Commissioner's determination, the
Commissioner's decision must be upheld, even if there is also
substantial evidence for a plaintiff's position.  Alston v.
Sullivan, 904 F.2d 122, 126 (2d Cir. 1990); Schauer v.

Schweiker, 675 F.2d 55, 57 (2d Cir. 1982); see also DeChirico v. Callahan, 134 F.3d 1177, 1182-83 (2d Cir. 1988) (Commissioner's decision affirmed where substantial evidence supported both sides).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from such facts. See Murphy v. Sec'y of Health & Human Servs., 62 F. Supp. 2d 1104, 1106 (S.D.N.Y. 1999); Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977). The rule that the Commissioner's findings of fact, as well as the inferences and conclusions to be drawn from those findings, are conclusive applies even in those instances where a reviewing court's independent analysis of the evidence may differ from the Commissioner's analysis. Rutherford v. Schweiker, 685 F.2d 60, 62-63 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). In short, the reviewing court is

17

not to decide the case.  Halloran, 362 F.3d at 31; Schaal v.
Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

In order to establish disability under the Act, a
claimant has the burden of establishing: (1) that she was unable
to engage in substantial gainful activity by reason of a
physical or mental impairment that could have been expected to
last for a continuous period of at least twelve months, and (2)
that the existence of such impairment was demonstrated by
evidence supported by data obtained by medically acceptable
clinical and laboratory techniques.  42 U.S.C. § 423(d)(1)(A);
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  More
particularly, the Act provides:

> An individual shall be determined to be under a disability
> only if [her] physical or mental impairment or impairments
> are of such severity that [she] is not only unable to do
> [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he
> applied for work. . . .

42 U.S.C. § 423(d)(2)(A).

18

For a person to be found disabled within the meaning of the Social Security Act, it is not sufficient that she establish the mere presence of a disease or impairment.  The claimant bears the burden of persuasion to show that the disease or impairment has caused functional limitations that preclude her from engaging in any substantial gainful activity and thus that she is entitled to benefits.  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983); Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).

**Butts' Rule 12(c) Motion Is Denied, The Commissioner's Motion Is Granted And The Denial Of Butts' Application For Disability Benefits Is Affirmed**

According to Butts, the ALJ's analysis of the record illustrates his predisposition to deny the claim, and proper analysis of the evidence would lead to a finding that Butts is disabled.  In contrast, the Commissioner contends that the decision that Butts was not disabled is supported by substantial evidence and should be affirmed.  Because the Commissioner's findings are supported by substantial evidence and because Butts has failed to demonstrate bias or error in the ALJ's analysis of the evidence presented, Butts' motion for judgment on the pleadings is denied, and the Commissioner's motion for judgment on the pleadings is granted.

The points of dispute raised in the parties' cross-
motions for judgment on the pleadings concern two issues: the
ALJ's analysis of Butts' "residual functional capacity" (RFC),
and the ALJ's use of the vocational expert's testimony.
According to Butts, the ALJ engaged in an improper evaluation of
Butts' RFC because he misinterpreted the evidence presented and
failed to afford controlling weight to the medical opinions of
Butts' treating physicians.  Additionally, Butts contends that
the ALJ misinterpreted the testimony the vocational expert,
Cestar, offered at the hearing.  Notwithstanding Butts'
contentions, the ALJ's finding that Butts is not disabled was
supported by substantial evidence, and the Commissioner's
decision to deny disability benefits is affirmed.

## A. Substantial Evidence Supports The ALJ's Findings Concerning Butts' RFC

In evaluating whether a claimant is disabled, a five-
step sequential evaluation process is employed.  See 20 C.F.R. §
404.1520(a)(1).  These five steps ask that the ALJ consider: (1)
a claimant's work activity, if any; (2) the medical severity of
a claimant's impairment, finding a claimant to be not disabled
if the claimant does not have a severe medically determinable

physical or mental impairment, or combination of impairments,
that meets the duration requirement of twelve months; (3) the
medical severity of a claimant's impairment, finding a claimant
to be disabled if the claimant has an impairment that meets or
equals one of the impairments on a specified listing and meets
the duration requirement of twelve months; (4) a claimant's RFC
and past relevant work to determine if a claimant can perform
her previous occupation; and (5) a claimant's RFC and age,
education and work experience to determine if a claimant can
make an adjustment to other work.  See 20 C.F.R. §
404.1520(a)(4)(i-v).

        With respect to the RFC analysis, the Second Circuit
has held that an ALJ must specify the basis for a finding as to
residual functional capacity.  White v. Sec'y of Health & Human
Servs., 910 F.2d 64, 65 (2d Cir. 1990).  RFC is defined as "the
most [a claimant] can still do despite [his or her]
limitations."  20 C.F.R. § 404.1545(a).  In evaluating RFC, an
ALJ considers a claimant's physical abilities, mental abilities,
other impairments and total limiting effects.  See id.  Since
the ALJ found that Butts met her burden of establishing that she
could not do her past relevant work, the burden shifted to the
Commissioner to show the existence of other jobs in the national
economy that Butts was capable of performing.  See Berry v.

21

Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) ("The claimant bears
the initial burden of showing that his impairment prevents him
from returning to his prior type of employment. . . . If he
meets that burden, the burden shifts to the Secretary to prove
the existence of alternative substantial gainful work which
exists in the national economy and which claimant could perform.
. ."). Here, the ALJ concluded that:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform the full range of light work
> as defined in 20 CFR 404.1567(b). She can sit for six to
> eight hours in an eight hour day, stand/walk for six hours
> in an eight hour day, except she needs a sit/stand option,
> and lift and carry ten pounds frequently and twenty pounds
> occasionally.

(Tr. 19). The applicable regulation defines light work:

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds. Even though the weight lifted may be very
> little, a job is in this category when it requires a good
> deal of walking or standing, or when it involves sitting
> most of the time with some pushing and pulling of arm or
> leg controls. To be considered capable of performing a
> full or wide range of light work, you must have the ability
> to do substantially all of these activities. If someone
> can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting
> factors such as loss of fine dexterity or inability to sit
> for long periods of time.

22

20 C.F.R. § 404.1567(b).

Butts contends that nothing the record supports the RFC found by the ALJ. Butts criticizes the ALJ for giving controlling weight to the opinion of Dr. Lathan, notwithstanding the fact that Butts' two main treating physicians - Dr. Vlattas and Dr. Palmeri - repeatedly made findings of tenderness and spasm supporting Butts' complaints of pain. Butts contends that Dr. Lathan's opinion cannot be bolstered with Dr. Katzman's opinion, as Dr. Katzman based his findings only upon examination of Butts' head injuries. According to Butts, the trip to South Carolina cannot be used as evidence of her functional capacity, as that trip was only made possible by Butts' use of medication. Additionally, Butts states that the ALJ erred in analogizing Butts' daily activity level to the ability to sustain an RFC, as the ability to participate in routine activities does not rebut statements of pain or impairment unless there is proof that the claimant is engaged in those activities for sustained periods of time comparable to those required to hold a job. See Polidoro v. Apfel, No. 98 Civ. 2071, 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) (citing Carroll, 705 F.2d at 643).

Notwithstanding Butts' contentions, substantial evidence, in the form of both medical opinions as well as

23

descriptions of Butts' daily activities, supports the ALJ's finding that Butts has the RFC to perform light work that allowed for a sit/stand option.  However, before delving into the medical evidence, Butts' contention regarding the ALJ's alleged inappropriate weighting of this evidence must first be addressed.

Butts contends that the ALJ erred in not giving the opinions of Butts' treating physicians the controlling weight to which they were entitled.  If a treating source opinion is both "well supported" and "not inconsistent with the other substantial evidence," then the opinion should be given "controlling weight."  20 C.F.R. § 404.1527(c)(2).  A claimant's subjective evidence of pain is entitled to great weight where it is supported by objective medical evidence.  Melchior v. Apfel, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (citing Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992)).  According to Butts, the MRIs in this case contain significant positive objective findings.  Butts also notes that complaints of pain are noted in virtually all of the office visits and are clear from her testimony at the hearing.  According to Butts, Dr. Vlattas' opinion regarding Butts' inability to focus and concentrate is entitled to "controlling weight," yet the ALJ did not afford this opinion the degree of deference to which it is

entitled, instead inappropriately relying on Dr. Lathan's May 4,
2007 examination.

The regulations governing how the Social Security
Administration weighs medical opinions state:

> Generally, we [the Social Security Administration] give
> more weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals
> most able to provide a detailed, longitudinal picture of
> your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained
> from the objective medical findings alone or from reports
> of individual examinations, such as consultative
> examinations or brief hospitalizations.  If we find that a
> treating source's opinion on the issue(s) of the nature and
> severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in your case record, we will give it
> controlling weight.

20 C.F.R. § 404.1527(c)(2).

Although Butts faults the ALJ for giving controlling
weight to the opinions of Dr. Lathan and Dr. Vlattas, neither
Dr. Vlattas nor Dr. Palmeri indicated that Butts was precluded
from working.  Dr. Palmeri assessed Butts as "temporarily
totally disabled," (Tr. 191, 514), and Dr. Vlattas considered
Butts to be, in some reports, "partially disabled," (Tr. 225,
231, 452, 523, 525), while in other reports Dr. Vlattas

25

considered Butts to be "partially disabled, capable of sedentary-type work" (Tr. 189, 222, 242).  As such, the opinions of Butts' treating sources do not suggest Butts to be unable to work.  Butts has failed to highlight any aspect of these opinions stating that Butts cannot perform the light work the ALJ determined she could perform.

Additionally, Dr. Vlattas and Dr. Palmeri rendered their opinions in connection with Butts' claim for workers' compensation benefits.  While a physician may render an opinion regarding an individual's disability in the context of a workers' compensation benefits claim, that opinion is not necessarily relevant for purposes of determining disability under the Social Security Act.  See Gray v. Chater, 903 F. Supp. 293, 299-301 n.8 (N.D.N.Y. 1995) ("The issue of disability for purposes of workers' compensation is different from the issue of disability for purposes of Social Security disability benefits and SSI benefits.").  Unlike the opinions of Dr. Vlattas and Dr. Palmeri which were rendered for workers' compensation purposes, Dr. Lathan's opinion was requested by the Commissioner for purposes of determining Butts' disabled status.  Thus, the ALJ's decision to give Dr. Lathan's opinion greater weight is reasonable.

"Genuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); see also 20 C.F.R. § 416.946(c) (assessment of RFC is a responsibility of the ALJ, who is trier of fact). Butts has failed to identify any portion of the reports of Dr. Vlattas and Palmeri suggesting Butts to be unable to perform the light work the ALJ described in his opinion.  Although Butts emphasizes the regulations concerning the primacy of treating source opinions, the fact that the opinions of Dr. Vlattas and Dr. Palmeri were rendered in the context of a workers' compensation claim provide a reasonable basis for the ALJ to weigh more heavily the opinions of Dr. Lathan and Dr. Katzman to determine Butts' disabled status.  Accordingly, Butts' contention that the ALJ erred in failing to give controlling weight to the medical opinions of Dr. Vlattas and Dr. Palmeri is without merit.

Consideration of the evidence offered at the hearing reveals that substantial evidence supported the ALJ's finding concerning Butts' RFC.  This substantial evidence takes the form of both medical opinions as well as descriptions of Butts' life activities.  The report of a consultative physician may constitute substantial evidence to support the ALJ's decision. See Mongeur, 722 F.2d at 1039.  Here, substantial evidence

27

supporting the ALJ's determination regarding Butts' RFC is presented in opinions from Dr. Lathan and Dr. Katzman.

Dr. Lathan's examination revealed that Butts' gait was normal, that she walked on her heels and toes without difficulty, that she performed a full squat and that she had a normal stance (Tr. 203). Butts required no assistive device or help changing for the examination, she could climb onto and off the examination table and was able to rise from a chair without difficult (Tr. 203). Dr. Lathan noted a limitation in Butts lumbar spine flexion, but Butts had full ranges of motion in her cervical spine, her thoracic spine was normal and there was full range of motion of the shoulders, elbows, forearms, wrists, hips, knees and ankles (Tr. 203-04). Muscle strength was normal in the arms and legs, joints were stable and non-tender, and a neurologic examination showed that deep tendon reflexes were physiologic and equal in the arms and legs (Tr. 204). Dr. Lathan considered Butts' condition "stable" and noted only that "[t]here is a moderate restriction for bending" (Tr. 204).

Similarly, Dr. Katzman found full ranges of motion in Butts' cervical and lumbar spine and left shoulder (Tr. 195-96). Dr. Katzman reported Butts' reflexes and sensation to be normal, as was the straight leg raising test (Tr. 195). Dr. Katzman

28

also reviewed notes from Dr. Palmeri and Dr. Vlattas (Tr. 196),
and he assessed that "from an orthopedic standpoint, [Butts]
could return to work." (Tr. 196).  Although Butts contends that
Dr. Katzman's opinion is entitled to little weight because its
scope was limited to findings concerning the head, Dr. Katzman's
report is comprehensive, addressing Butts' cervical spine,
lumbar spine and left shoulder, as well as the notes of her
treating physicians (Tr. 195-96).  Furthermore, even if Dr.
Katzman's opinion is disregarded, substantial evidence still
exists in the form of Dr. Lathan's report.

    With respect to the medical opinions offered by Dr.
Palmeri and Dr. Vlattas, it must be noted that neither Dr.
Vlattas nor Dr. Palmeri indicated that Butts was precluded from
working.  Dr. Palmeri assessed Butts as "temporarily totally
disabled," (Tr. 191, 514), and Dr. Vlattas considered Butts to
be, in some reports, "partially disabled," (Tr. 225, 231, 452,
523, 525), while in other reports Dr. Vlattas considered Butts
to be "partially disabled, capable of sedentary-type work" (Tr.
189, 222, 242).  As noted above, Butts has highlighted no aspect
of these medical reports that is specifically contrary to the
ALJ's findings with respect to Butts' RFC for light work.
Accordingly, the medical evidence offered in this case provides

29

substantial support for the Commissioner's decision to deny
disability benefits.

In addition to the medical reports, other evidence
presented at the hearing supports the denial of disability
benefits.  Butts reported that she had traveled to South
Carolina (Tr. 42), went to the casino twice every six months
(Tr. 134) and drove her son to school on a daily basis (a half-
hour drive) (Tr. 50).  Butts also said that, with breaks, she
can clean the house for five hours (Tr. 51), that she does her
own cooking (Tr. 52-53) and that she goes to church one a month
(Tr. 135).  Although Butts contends that the ALJ erred in
considering these activities, the applicable regulations
specifically provide that daily activities should be compared to
a claimant's allegations in order to assess a claimant's
credibility.  See 20 C.F.R. § 404.1529(c)(3) ("Factors relevant
to your symptoms, such as pain, which we will consider include:
(i) Your daily activities").

As was noted above, the Social Security Act provides
that the "findings of the Commissioner of Social Security as to
any fact, if supported by substantial evidence, shall be
conclusive."  42 U.S.C. § 405(g).  Here, the opinions of Dr.
Lathan, Dr. Katzman, Dr. Palmeri and Dr. Vlattas provide

30

substantial evidence in support of the Commissioner's decision to deny disability benefits.  This evidence is further bolstered by Butts' detailing of her travels and daily activities.  Such evidence of her non-disabled status is not just a "mere scintilla" but rather "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401.

## B. The Vocational Expert's Testimony Supported The Decision To Deny Butts' Application For Disability Benefits, And The ALJ's Use Of The Testimony Was Not Improper

In addition to engaging in an improper RFC analysis, Butts contends that the ALJ erred in his use and analysis of the vocational expert's testimony.  Butts contends that, although the ALJ found that Butts has the RFC for light work with a "sit/stand option" (Tr. 19), Social Security Ruling 83-12 recognizes that "unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."  At the hearing, Butts' counsel specifically asked the vocational expert whether any of the jobs the expert identified were managerial, to which the expert relied that all of the jobs described were unskilled (Tr. 67).  Accordingly, Butts contends that the ALJ erred in interpreting the vocational expert's testimony, as the expert only identified unskilled jobs, which,

31

by definition, involve a structure where the employee cannot usually sit or stand at will.  Additionally, Butts notes that when the vocational expert was asked whether an employee who had pain severe enough to interfere with attention and concentration for up to one-third of an eight-hour day had the RFC to perform sedentary work with the sit/stand option (Tr. 67-68), the vocational expert indicated that none of the previously identified jobs could be performed (Tr. 68).  As such, Butts contends that the ALJ erred in his use of the vocational expert's testimony.

With respect to Butts' contention that the ALJ erred in interpreting the vocational expert's testimony because the expert only identified unskilled jobs involving a structure where the employee cannot usually sit or stand at will, Butts' argument fails, as the ALJ specifically inquired as to whether a sit/stand option was available for the positions discussed.  For example, in discussing whether Butts could serve as a surveillance system monitor, the ALJ specifically inquired as to whether a sit/stand option was available, and the vocational expert testified in the affirmative:

> Q. All right.  I know that with surveillance system monitor
> - - is that a - - is that a sit/stand that will - -

32

A. It does permit that, in fact, your honor.

(Tr. 66).  The ALJ disregarded two other jobs the vocational expert mentioned, namely "clerical worker" and "assembler, small parts," because a sit/stand option was not available (Tr. 66). When the ALJ asked "[a]re there any other jobs that would permit for a sit/stand option," the vocational expert testified that both a "parking lot cashier" and "ticket seller/cashier" both had a sit/stand option available (Tr. 66).  As such, Butts' contention that the ALJ misinterpreted the vocational expert's testimony on the basis that the jobs described did not have a sit/stand option is unsupported by the record.

With respect to Butts' contention that the vocational expert testified that no jobs existed for someone with Butts' symptoms of headaches, it must first be recognized that the question posed to the vocational expert at the hearing was limited to "sedentary" jobs and did not include "light" work (Tr. 67).  Additionally, the evidence in the record concerning Butts' headaches is derived from her own testimony and what she reported to her physicians.  As such, whether her complaints of headaches precluded her from light work is a question of credibility that the ALJ, as the trier of fact, is empowered to decide.  See, e.g., Pascariello v. Heckler, 621 F. Supp. 1032,

33

1036 (S.D.N.Y. 1985) (noting that after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving conflicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment).  There is evidence in the record suggesting Butts' complaints of debilitating headaches to be less than credible, including discussion of her travel to South Carolina (Tr. 42), to the casino (Tr. 134), daily half-hour car trips to her son's school (Tr. 50), 25 to 30 minute car trips to the supermarket (Tr. 51), monthly trips to church (Tr. 134-35), periods of housecleaning that could last up to 5 hours with breaks (Tr. 51), the fact that Butts did her own cooking (Tr. 52) and Butts' testimony that, with medication, her headache pain was "manageable" (Tr. 48-49).  As such, there is substantial evidence to support the ALJ's decision regarding Butts' ability to perform the type of light work discussed at the hearing.

## C. Butts Has Failed To Present Evidence Supporting Her Contention That The ALJ Was Predisposed To Deny Her Claim

Although Butts contends that the ALJ's analysis of the record shows his predisposition to deny Butts' claim, Butts has failed to bear her burden of establishing the existence of any

form of bias.   There is a presumption that administrative adjudicators, such as ALJs, are unbiased, <u>Schweiker v. McClure</u>, 456 U.S. 188, 195-96, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), and that they exercise their decision-making authority with honesty and integrity.  <u>Withrow v. Larkin</u>, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).  To rebut this presumption, Butts must demonstrate a conflict of interest or some other specific reason for disqualification, <u>Schweiker</u>, 456 U.S. at 195, or that the ALJ engaged in conduct so extreme that it deprived the hearing of the fundamental fairness mandated by due process. <u>Liteky v. United States</u>, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).  As established both by the evidence in support of the ALJ's findings with respect to Butts' RFC and by the ALJ's appropriate use of the vocational expert's testimony, Butts has failed to present any evidence of bias on the part of the ALJ.  Substantial evidence supports the ALJ's findings concerning Butts' RFC and the appropriateness of light work described by the vocational expert.

## Conclusion

Based on the facts and conclusions set forth above, Butts' Rule 12(c) motion for judgment on the pleadings is denied, the Commissioner's motion for judgment on the pleadings

35

is granted and the denial of Butts' application for disability

benefits is affirmed.


It is so ordered.


**New York, NY**
**September  , 2012**


_____
ROBERT W. SWEET
U.S.D.J.